USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/21/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CENTRANS TRUCK LINES, LLC, *an Indiana Limited Liability Company*,

                Plaintiff,

-against-

ORIENT EXPRESS CONTAINER CO LTD, a Foreign Corporation & OEC FREIGHT (NY) INC., *a New York Corporation*,

                Defendants.

1:22-cv-05477 (MKV)

**MEMORANDUM OPINION AND ORDER GRANTING PARTIAL MOTION TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Centrans Truck Lines, LLC ("Centrans") brings this action against Orient Express Container Co. Ltd. and OEC Freight (NY) Inc. (collectively, "OEC") asserting five claims: (1) breach of a settlement agreement, (2) promissory estoppel, (3) breach of contract, (4) account stated, and (5) unjust enrichment. OEC moves to dismiss the first, second, fourth, and fifth causes of action under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the partial motion to dismiss is GRANTED.

## BACKGROUND[1]

Centrans is a motor carrier. Complaint ¶ 1 [ECF No. 1] ("Compl."). OEC is a non-vessel operating common carrier. Compl. ¶¶ 7, 10.

On November 19, 2020, the parties executed a Transportation Agreement, stating that Centrans would provide transportation services for OEC's customers. Compl. ¶¶ 16, 17. The Transportation Agreement provided that OEC would compensate Centrans within 30 days of receiving any invoice. Compl. ¶ 17. For almost a year, OEC routinely paid Centrans' invoices.

---

[1] The facts are taken from the Complaint, and for purposes of resolving this motion, are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Compl. ¶ 23.  However, beginning in August 2021, OEC stopped making payments.  Compl. ¶ 25.  By January 2022, OEC owed Centrans $861,721.61.  Compl. ¶ 26.

Centrans sent OEC a demand letter in February 2022.  Compl. ¶ 26; *see also* Exhibit D [ECF No. 1-4].  OEC did not reply.  Compl. ¶ 27.  The next month, Centrans' CEO, Mike Cavanaugh, emailed OEC, offering to settle the outstanding balance for $732,463.36.  Compl. ¶ 27.  Later that day, Cavanaugh spoke on the phone with OEC's Regional Vice President of Operations, Steve Myers.  Compl. ¶ 28.  Myers "accepted Centrans' [settlement] offer" on the call.  Compl. ¶ 28.

The next day, Cavanaugh sent Myers a draft settlement agreement memorializing the terms of their agreement.  Compl. ¶ 29.  Before responding to Cavanaugh's draft settlement agreement, OEC wired Centrans $366,232.52.  Compl. ¶ 31.  Several days later, Myers sent Cavanaugh a revised settlement agreement, showing his changes in redline.  Compl. ¶ 32.  Of note, Myers' redlined draft (i) reduced the amount owed to account for the $366,232.52 payment, (ii) made $11,200 of the remaining balance due within three days of locating a particular shipping container and its contents, and (iii) made the remaining balance of $355,030.84 due within three days of the execution of the agreement.  Compl. ¶ 34.  Cavanaugh responded the next day with a clean draft, accepting all of Myers' revisions (the "Settlement Agreement" or the "Agreement") and asking Myers to "sign, return, and process payment."  Compl. ¶ 35; *see also* Exhibit E [ECF No. 1-5] ("SA").  Myers did not reply.  Several days later, Centrans followed up to "inquir[e] about the status of [Myers'] signature."  Compl. ¶ 36.  Myers then indicated to Centrans his "intent to renege on the Settlement Agreement."  Compl. ¶ 37.

Centrans filed its Complaint in June 2022, asserting claims for (i) breach of the Settlement Agreement, (ii) promissory estoppel, (iii) breach of the Transportation Agreement, (iv) account stated, and (v) unjust enrichment.  *See* Compl.  OEC moves to dismiss all claims except for the

breach of contract claim stemming from the Transportation Agreement. *See* Motion to Dismiss [ECF No. 27]; Defendants' Memorandum of Law in Support [ECF No. 28] ("Def. Mem."). Centrans opposed, *see* Memorandum of Law in Opposition [ECF No. 29] ("Opp."), and OEC replied, *see* Reply Memorandum of Law [ECF No. 30] ("Reply.").

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court "must accept as true all of the allegations contained in a complaint," this "tenet . . . is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The Court may also consider "documents attached to the complaint as an exhibit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

## ANALYSIS

### I. Centrans Does Not Plausibly State a Claim for Breach of the Settlement Agreement

Centrans first asserts a claim titled "breach of the settlement agreement." Compl. ¶¶ 42–53. Specifically, Centrans contends that the "sending of the redline agreement was an offer to settle OEC's outstanding debt to Centrans" and that "Centrans accepted the offer by incorporating all of the edits proposed in the redline agreement and sending the document . . . to OEC for signature without any reservations."[2] Compl. ¶¶ 43, 44. OEC disagrees, arguing that the

---

[2] Centrans does *not* argue that the agreement Cavanaugh and Myers allegedly reached on the phone constituted an enforceable contract.

Settlement Agreement was never executed by the parties and is, therefore, not an enforceable contract.  Def. Mem. 6–14.

"New York follows the generally accepted rule that when parties negotiating a proposed contract express an intent not to be bound until their negotiations have culminated in the execution of a formal contract, they cannot be held bound until that event has occurred." *Jim Bouton Corp. v. Wm. Wrigley Jr. Co.*, 902 F.2d 1074, 1081 (2d Cir. 1990); *see also Kowalchuk v. Stroup*, 61 A.D.3d 118, 122, 873 N.Y.S.2d 43, 47 (1st Dep't 2009) ("It is well settled that, if the parties to an agreement do not intend it to be binding upon them until it is reduced to writing and signed by both of them, they are not bound and may not be held liable until it has been written out and signed.").  "The point of these rules is to give parties the power to contract as they please, so that they may, if they like, bind themselves orally or by informal letters, or that they may maintain 'complete immunity from all obligation' until a written agreement is executed." *R.G. Grp. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir. 1984) (quoting *Corbin on Contracts* § 30 at 98 (1963)).[3]

In *Winston v. Mediafare Entertainment Corporation*, the Second Circuit outlined four factors to consider in determining whether parties "intended to be bound in the absence of a document executed by both sides."  777 F.2d 78, 80 (2d Cir. 1985); *see also CAC Grp. v. Maxim Grp. LLC*, 523 F. App'x 802, 803–04 (2d Cir. 2013).  The factors are: (1) "whether there has been an express reservation of the right not to be bound in the absence of a writing," (2) "whether there has been partial performance of the contract," (3) "whether all of the terms of the alleged contract have been agreed upon," and (4) "whether the agreement at issue is the type of contract that is usually committed to writing."  777 F.2d at 80.  Although no single factor is dispositive, the first

---

[3] The Second Circuit has concluded that "there is no material difference between the applicable state law or federal common law standard" in determining the enforceability of settlement agreements.  *Ciaramella v. Reader's Dig. Ass'n*, 131 F.3d 320, 322 (2d Cir. 1997).  Courts therefore "apply New York and federal common law interchangeably." *Sprint Commc'ns Co. v. Jasco Trading, Inc.*, 5 F. Supp. 3d 323, 328 (E.D.N.Y. 2014).

is "the most important." *Adjustrite Sys., Inc. v. GAB Bus. Servs. Inc.*, 145 F.3d 543, 549 (2d Cir. 1998) (citation omitted). Indeed, where "there is a writing between the parties showing that the defendant did not intend to be bound . . . a court need look no further than the first factor." *RKG Holdings, Inc. v. Simon*, 182 F.3d 901 (2d Cir. 1999) (quoting *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir. 1989)).[4]

    A.    <u>*Express Reservation*</u>

Beginning with the first *Winston* factor, the Court finds "numerous indications" in the Settlement Agreement "that the parties did not intend to bind themselves until the settlement had been signed." *Ciaramella v. Reader's Dig. Ass'n*, 131 F.3d 320, 324 (2d Cir. 1997). Mindful of the obligation to "avoid frustrating the clearly-expressed intentions of the parties," the Court "give[s] these statements considerable weight." *Id.*

To start, the Settlement Agreement repeatedly refers to execution. *See* SA § 1 ("Upon *execution* of this Agreement by both Parties, the Parties agree to . . . ." (emphasis added)); SA § 8 ("This Agreement may be *executed* in one or more identical counterparts." (emphasis added)); SA § 11 ("The Parties warrant that they are authorized to *execute* this Agreement.") (emphasis added)). Indeed, the Settlement Agreement explicitly ties OEC's payment obligation to the date that the Agreement is executed. *See* SA § 1.1 ("OEC shall pay Centrans $355,030.84 within three (3) days of the *execution* of this agreement." (emphasis added)). These repeated references to execution "evince[] an intent not to create a binding settlement until some formal date of execution." *Kaczmarcysk v. Dutton*, 414 F. App'x 354, 355 (2d Cir. 2011) (quoting *Ciaramella*, 131 F.3d at

---

[4] Centrans argues that the parties' intentions to bind themselves (or not) to the Settlement Agreement is a question of fact. *See* Opp. 5. While Centrans is correct that "the Court is not permitted to make factual determinations," the Court *is* "tasked with determining whether [Centrans'] allegations, presumed true, state a plausible claim." *Hallett v. Stuart Dean Co.*, 481 F. Supp. 3d 294, 301 (S.D.N.Y. 2020). Because "contractual intent is ordinarily a matter derived from the plain language of the contract," it is "frequently subject to a determination on the pleadings as a matter of law." *Id.*

5

324); *see also Hernandez v. Fresh Diet Inc.*, No. 12-CV-4339, 2017 WL 4838328, at *3 (S.D.N.Y. Oct. 25, 2017) ("Such references to execution demonstrate an intent not to be bound until then.").

But references to execution are not the only textual indicators that the parties believed formal execution was necessary for the Settlement Agreement to become effective. The Agreement contains a merger clause, *see* SA § 9, which the Second Circuit has explained constitutes "persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement." *Ciaramella*, 131 F.3d at 324; *see also CAC*, 523 F. App'x at 805; *Kaczmarcysk*, 414 F. App'x at 355. The Settlement Agreement also provides that it may be modified only "by a writing that has been approved by and signed by all the Parties." SA § 10. This provision, too, indicates that the parties contemplated negotiation—and mutual agreement reduced to a writing—before being bound. *See CAC*, 523 F. App'x at 805; *Hallett v. Stuart Dean Co.*, 481 F. Supp. 3d 294, 302 (S.D.N.Y. 2020). Moreover, the terms of the Agreement are introduced by a clause reading: "NOW THEREFORE, in consideration of the promises . . . set forth within this Agreement . . . the adequacy of which is *hereby* acknowledged . . . ." SA Introduction (emphasis added). The Second Circuit has found that similar language "indicates that the parties understood that the written agreement would effectuate a binding contract and not merely memorialize a contract that had already been entered into." *CAC*, 523 F. App'x at 805; *see also Cabrera Cap. Markets, LLC v. Further Lane Sec., L.P.*, No. 12-CV-2898, 2013 WL 5462373, at *5 (S.D.N.Y. Sept. 25, 2013) (finding an intent not to be bound where the Agreement contained "NOW THEREFORE" and "hereby grant" language). Finally, the Settlement Agreement contains two blank signature blocks for each party to complete, in addition to two incomplete "on this ____ day of March" dates. SA; *see Spencer Trask Software & Info. Servs. LLC v. RPost Int'l*, 383 F. Supp. 2d 428, 442 (S.D.N.Y. 2003) ("blank signature lines with an open agreement date" indicated

"that the parties did not evince an intent to be bound prior to execution"). Collectively, these provisions strongly indicate that the parties did not intend to be bound until written execution.

Centrans' conduct only buttresses this conclusion. The Complaint alleges that Cavanaugh asked Myers to "*sign*, return, and process payment." Compl. ¶ 35 (emphasis added). After Myers failed to respond, Cavanaugh followed up to "inquir[e] about the status of [Myers'] *signature*." Compl. ¶ 36. Although Centrans now contends that acquiring signatures was unnecessary, its actions in the immediate aftermath of settlement negotiations indicate that signatures were, in fact, quite meaningful. *See Kargo, Inc. v. Pegaso PCS, S.A. de C.V.*, No. 05-CV-10528, 2008 WL 4579758, at *7 (S.D.N.Y. Oct. 14, 2008) (concluding that "the correspondence between the parties . . . strongly indicate[d] that the parties intended to be bound only upon signature of the agreement by both parties").

Centrans attempts to dismiss these numerous contractual provisions—that were, interestingly enough, drafted by Centrans—as mere "boilerplate." Opp. 7. Even if these provisions are standard, that fact is irrelevant, as "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562, 569, 780 N.E.2d 166, 170, 750 N.Y.S.2d 565, 569 (N.Y. 2002); *see also In re Lehman Bros. Holdings Inc.*, 439 B.R. 811, 827 (Bankr. S.D.N.Y. 2010) ("[C]ourts typically accord full force and effect to boilerplate language within a contract.").

For these reasons, the first and "most important" *Winston* factor weighs overwhelmingly in favor of OEC. *Adjustrite Sys.*, 145 F.3d at 549.[5]

---

[5] This finding distinguishes this case from *Chang v. CK Tours, Incorporated*, 605 F. Supp. 3d 529 (S.D.N.Y. 2022), where the district court found the first *Winston* factor weighed in favor of enforcement because "neither party seriously claim[ed that] it expressly reserved the right not to be bound absent a writing." *Id.* at 539. The same is true of *Kowalchuk v. Stroup*, 61 A.D.3d 118, 873 N.Y.S.2d 43 (1st Dep't 2009), where the First Department concluded that "none of [the] defendant's correspondence indicated an intent not to be bound until an agreement was executed by both parties" and, quite the opposite, "defendant's counsel affirmatively notified the [arbitrator] that a settlement was reached, without any assurances that plaintiffs had executed the agreement." *Id.* at 124, 48.

7

B.     *Partial Performance*

The second factor examines whether a party has partially performed under a preliminary agreement and whether that performance has been accepted by the party disclaiming the contract. *See R.G.*, 751 F.2d at 75–76.  This factor does not weigh in favor of a binding agreement, either.

Centrans makes much of the fact that OEC wired Centrans $366,232.52 during settlement negotiations.  Opp. 10–11, Compl. ¶ 31.  But OEC wired the money *before* Myers responded to Cavanaugh with the redlined Settlement Agreement—which, according to Centrans, was the "offer to settle OEC's outstanding debt."  Compl. ¶ 43.  Indeed, Myers later revised the Settlement Agreement to reflect the fact that OEC had *already made* the $366,232.52 payment—not to promise that the payment *would* be made.  *See Barker v. Bancorp, Inc.*, No. 21-CV-869, 2022 WL 595954, at *10 (S.D.N.Y. Feb. 25, 2022) ("The Barker Complaint clearly alleges partial performance of the contract, but such performance was undertaken *before* the alleged agreement was reached." (emphasis in original)).  Accordingly, the Court cannot conclude that OEC partially performed any promises outlined in the Settlement Agreement.  This factor weighs neutrally.

C.     *Agreement on All Material Terms*

The third factor examines whether there was "literally nothing left to negotiate." *Winston*, 777 F.2d at 82 (quoting *R.G.*, 751 F.2d at 76).  OEC notes that the execution date was left unresolved by the Settlement Agreement.  Def. Mem. 12–13.  Centrans contends that this "lone blank" should not "operate as an escape hatch for Defendants."  Opp. 12.

The Court cannot conclude that there was "literally nothing left to negotiate."  As explained above, OEC's payment schedule is explicitly tied to the date on which the Agreement is executed. *See* SA § 1.1 ("OEC shall pay Centrans $355,030.84 within three (3) days of the *execution* of this agreement." (emphasis added)).  Because the execution date was apparently left unresolved—and that date triggers OEC's obligation to pay Centrans—it appears there was at least *something* left

8

to negotiate. Indeed, the Second Circuit has instructed that "even 'minor' or 'technical' changes . . . can weigh against a conclusion that the parties intended to be bound absent a formal writing." *Powell v. Omnicom*, 497 F.3d 124, 130 (2d Cir. 2007) (citing *Winston*, 777 F.2d at 82–83). The Court finds this factor weighs, albeit somewhat weakly, in OEC's favor.

>   D.   *Usual Form of Agreement*

The fourth *Winston* factor, "whether the agreement at issue here was the type of contract that was usually put in writing," *Winston*, 777 F.2d at 83, is often "considered in terms of whether in the relevant business community, it is customary to accord binding force to the type of informal or preliminary agreement at issue," *Barker*, 2022 WL 595954, at *11 (citation and quotation marks omitted). Several courts in this district have recognized that "it is nearly impossible to determine at the motion to dismiss stage whether a more formal contract would normally be expected under prevailing industry conditions." *Bloomfield Inv. Res. Corp. v. Daniloff*, No. 17-CV-4181, 2021 WL 1611951, at *6 (S.D.N.Y. Apr. 26, 2021).

However, here, Centrans *concedes* that "[a]n over $800,000 balance owed by one business entity to another is the type of situation where one would expect to find a written settlement agreement resolving a dispute over debt." Opp. 13. Indeed, the Second Circuit has explained that where, as here, "the parties are adversaries and the purpose of the agreement is to forestall litigation, prudence strongly suggests that their agreement be written in order to make it readily enforceable, and to avoid still further litigation." *Ciaramella*, 131 F.3d at 326.

Centrans attempts to argue that this factor weighs in its favor. Opp. 13. Specifically, Centrans contends that although the "Settlement Agreement is not executed . . . that does not mean it is not in writing. It is." Opp. 13. But Centrans entirely misunderstands this factor. The issue is not whether *any* writing exists—it is whether this is the type of agreement that would typically require a formally executed, written contract. Indeed, in *Winston*, there was an *unsigned* draft

9

agreement. *See Winston*, 777 F.2d at 83. The same was true in *CAC Group, Incorporated v. Maxim Group LLC*, 523 F. App'x 802 (2d Cir. 2013), where the Second Circuit found that "*none* of the four *Winston* factors" weighed in favor of enforcing the draft agreement. *Id.* at 805 (emphasis added). Accordingly, the fourth *Winston* factor weighs in OEC's favor.

E. The Winston Factors Weigh Against Centrans

In sum, three of the *Winston* factors weigh in OEC's favor, one overwhelmingly, and none weigh in favor of Centrans. Even accepting the factual allegations of the Complaint as true,[6] the Court is not persuaded that the parties intended to be bound before execution of the Settlement Agreement. Count One is therefore dismissed.

## II. Centrans Does Not Plausibly Allege a Promissory Estoppel Claim

Centrans next asserts a promissory estoppel claim in Count Two, contending that it "reasonably and foreseeably relied" upon OEC's "clear and unambiguous promises" in the Settlement Agreement. Compl. ¶¶ 56, 57. Centrans asserts that it sustained $355,030.84 in damages "in reliance upon OEC's false promises." Compl. ¶ 60.

To state a claim for promissory estoppel in New York, Centrans must allege: (i) a sufficiently clear and unambiguous promise; (ii) reasonable reliance on the promise; and (iii) injury caused by the reliance. *Castellotti v. Free*, 138 A.D.3d 198, 204, 27 N.Y.S.3d 507, 513 (1st Dep't 2016). "Detrimental reliance is an indispensable element of a promissory estoppel claim." *Schroeder v. Pinterest Inc.*, 133 A.D.3d 12, 32, 17 N.Y.S.3d 678, 694 (1st Dep't 2015).

Centrans asserts in a conclusory fashion that it "reasonably and foreseeably relied upon OEC's promises." Compl. ¶¶ 56, 57. These assertions are insufficient because Centrans "does

---

[6] The Court has *not* accepted as true the multitude of legal conclusions Plaintiff has included throughout the Complaint. *See Iqbal*, 556 U.S. at 678. For instance, while the Court accepts Centrans' allegation that OEC sent a redline agreement to Centrans, the Court does *not* accept as true the contention that this constituted a contractual offer. *See* Compl. ¶ 43.

not explain how [it] purportedly relied" on any promises. *Schroeder*, 133 A.D.3d at 32, 17 N.Y.S.3d at 694. Moreover, the amount OEC allegedly owed Centrans *pre-dates* the creation of the Settlement Agreement. Centrans therefore fails to plausibly allege that any injuries were *caused by* its reliance on OEC's alleged promises. *See Knight Secs. L.P. v. Fiduciary Tr. Co.*, 5 A.D.3d 172, 175, 774 N.Y.S.2d 488, 490 (1st Dep't 2004) (dismissing promissory estoppel claim where "the complaint fail[ed] to allege that plaintiff was injured 'by reason of' its reliance on [defendant's] promise"). For these reasons, Count Two is dismissed.[7]

### III. Centrans Does Not Plausibly Allege an Account Stated Claim

The account stated claim in Count Four alleges that "Centrans sent OEC numerous invoices" for its services, to which OEC did not object. Compl. ¶¶ 73, 74. Centrans contends that OEC owes $495,489.09 "on this account stated of April 15, 2022." Compl. ¶ 78.

An "account stated is an agreement between parties to an account based upon prior transactions between them with respect to the correctness of the account items and balance due." *Erdman Anthony & Assocs., Inc. v. Barkstrom*, 298 A.D.2d 981, 981, 747 N.Y.S.2d 670, 671 (4th Dep't 2002). To state a claim for account stated, Centrans must allege that "(1) an account was presented; (2) it was accepted as correct; and (3) debtor promised to pay the amount stated." *Cvar Von Habsburg Grp., LLC v. Decurion Corp.*, No. 18-CV-11218, 2020 WL 4577440, at *3 (S.D.N.Y. Mar. 26, 2020) (quoting *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp.

---

[7] While not raised by either party, even assuming the Settlement Agreement were binding on both parties, OEC has no obligation under the document to remit payment to Centrans because two conditions precedent to payment outlined in the Settlement Agreement were never satisfied. First, $11,200 of the balance was due within three days of locating a particular shipping container. But Centrans admits that shipping container was never found. S*ee* Compl. ¶ 38. Second, the remaining balance of $355,030.84 was due within three days of the parties' execution of the agreement— which, of course, never happened, either. Accordingly, even under the plain terms of the Settlement Agreement, OEC is not obligated to remit payment. *See, e.g.*, *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690, 660 N.E.2d 415, 418, 636 N.Y.S.2d 734, 737 (N.Y. 1995) ("A condition precedent is an act or event, other than a lapse of time, which, unless the condition is excused, *must occur before a duty to perform a promise in the agreement arises*." (emphasis added) (quotation marks and citation omitted)). As a result, if Centrans were to prevail on its argument that the Settlement Agreement is binding and enforceable, Centrans would be entitled to recover nothing.

2d 395, 411 (S.D.N.Y. 2009)). "It is well-established . . . that an account stated claim may not 'be utilized simply as another means to attempt to collect under a disputed contract.'" *Arch Specialty Ins. Co. v. TDL Restoration, Inc.*, No. 18-CV-6712, 2021 WL 1225447, at *10 (S.D.N.Y. Mar. 31, 2021) (quoting *Martin H. Bauman Assocs. Inc. v. H & M Int'l Transp. Inc.*, 171 A.D.2d 479, 485, 567 N.Y.S.2d 404, 409 (1st Dep't 1991)).

Centrans is, quite transparently, utilizing the account stated claim as "another means to attempt to collect under a disputed contract"—namely, the Transportation Agreement. *Id.* The Transportation Agreement states that Centrans "must provide [OEC with] a completed invoice . . . for each shipment," and that OEC will compensate Centrans "within thirty (30) days of receipt" of any invoice. Exhibit A [ECF No. 1-1]; *see also* Compl. ¶ 17. Both the breach of contract claim and the account stated claim allege that Centrans suffered damages because OEC failed to pay its invoices. *Compare* Compl. ¶ 65, *with* Compl. ¶ 75. Moreover, both causes of action seek the *identical* amount in damages—$495,489.09. *Compare* Compl. ¶ 69, *with* Compl. ¶ 78.

The account stated claim is clearly "congruent with, and duplicative of," the claim for breach of contract stemming from the Transportation Agreement. *4Kids Ent., Inc. v. Upper Deck Co.*, 797 F. Supp. 2d 236, 249 (S.D.N.Y. 2011). Accordingly, Count Four is dismissed. *See Arch Specialty*, 2021 WL 1225447, at *10 (dismissing account stated claim where it "stem[med] from identical facts as its breach of contract claim and [sought] identical damages").

**IV.    Centrans Does Not Plausibly Allege an Unjust Enrichment Claim**

The unjust enrichment claim in Count Five alleges that Centrans "conferred benefits" on OEC and OEC "failed to compensate Centrans" for those benefits. Compl. ¶¶ 81, 83.

To state an unjust enrichment claim, Centrans must allege that "(1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Georgia Malone & Co. v. Rieder*, 19

12

N.Y.3d 511, 516, 973 N.E.2d 743, 746, 950 N.Y.S.2d 333, 336 (N.Y. 2012). An unjust enrichment claim may not be pled—even in the alternative—when there is a "valid and enforceable contract governing [the] . . . subject matter." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 587 (2d Cir. 2006).

Here, the parties agree that the Transportation Agreement is a valid contract. Compl. ¶ 63; Def. Mem. 18; Reply 10. Accordingly, the unjust enrichment claim "collapses into the contract dispute." *Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d 415, 431 (S.D.N.Y. 2020). Count Five is dismissed.

## **CONCLUSION**

For the foregoing reasons, the partial motion to dismiss is GRANTED. The Clerk of Court is respectfully requested to terminate docket entry 27. OEC is directed to answer within 14 days of the date of this Order.

**SO ORDERED.**

**Date:  August 21, 2023**　　　　　　　　　　　　**MARY KAY VYSKOCIL**
**　　　　New York, NY**　　　　　　　　　　　　**United States District Judge**